UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 5:15-cv-00092-PSG |
| Petitioner, | **ORDER DENYING ENFORCEMENT OF INTERNAL REVENUE SERVICE SUMMONS** |
| v. | |
| SANMINA CORPORATION AND SUBSIDIARIES, | **(Re: Docket No. 4)** |
| Respondent. | |

To substantiate its 2009 claim of a worthless stock deduction totaling roughly $503 million, Respondent Sanmina Corporation and Subsidiaries submitted to the Internal Revenue Service a report prepared by DLA Piper. In a footnote buried in the 102-page report, DLA Piper references two memoranda: a July 2, 2006 memorandum titled "Guarantee and Capital Contribution Agreement Concerning Sanmina International AG" and a March 11, 2009 memorandum titled "Stock and Debt Losses on Swiss-3600." After the IRS demanded both memoranda by summons, Sanmina resisted, claiming they are protected by the attorney client privilege and attorney work product doctrine. The IRS then filed this action to enforce.

1
Case No.: 5:15-cv-00092-PSG
ORDER DENYING ENFORCEMENT OF INTERNAL REVENUE SERVICE SUMMONS

The court finds that the memoranda are protected as Sanmina claims. The IRS' petition to enforce its summons therefore is DENIED.

# I.

In pursuit of its goal that our national tax burden is fairly and equally distributed, Congress granted the IRS the power to compel disclosure of information.[1] To that end, I.R.C. § 7601 directs the IRS to make inquiries into the tax liability of every person who may be responsible for paying any internal revenue tax.[2] I.R.C. § 7602 authorizes the IRS to examine records, issue summonses and take testimony for the purposes of "ascertaining the correctness of any return," "making a return where none has been made," "determining the liability of any person for any internal revenue tax" or "inquiring into any offense connected with the administration or enforcement of the internal revenue laws."[3]

To enforce a summons, the IRS need only make a prima facie showing that (1) an investigation is being conducted for a legitimate purpose; (2) the information sought may be relevant to that purpose; (3) the information sought is not already within the IRS' possession and (4) the administrative steps required by the Internal Revenue Code have been followed.[4] The burden on the IRS "is a slight one, and may be satisfied by a declaration from the investigating agent that the *Powell* requirements have been met."[5] The party challenging a summons has a "heavy" burden to negate the good faith purpose of the investigation or show that enforcement

---

[1] *See United States v. Arthur Young & Co.*, 465 U.S. 805, 815-16 (1984); *U.S. v. Bisceglia*, 420 U.S. 141, 145-46 (1975).

[2] *See Donaldson v. United States*, 400 U.S. 517, 522 (1971).

[3] I.R.C. § 7602(a) & (b); *see United States v. Euge*, 444 U.S. 707, 710 (1980).

[4] *See United States v. Powell*, 379 U.S. 48, 57-58 (1964); *Ponsford v. United States*, 771 F.2d 1305, 1307 (9th Cir. 1985).

[5] *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993).

2
Case No.: 5:15-cv-00092-PSG
ORDER DENYING ENFORCEMENT OF INTERNAL REVENUE SERVICE SUMMONS

would amount to an abuse of the court's process.[6] But the IRS' power to obtain information by summons is "not absolute and is limited by the traditional privileges, including the attorney client privilege" and the work product doctrine.[7] For privilege purposes, there is no difference between legal advice and tax advice on compliance, so long as the advice goes beyond mere tax preparation and calculations.[8] Similarly, a document "does not lose protection . . . merely because it is

---

[6] *Powell*, 379 U.S. at 58; *Dynavac, Inc.*, 6 F.3d at 1414; *see also Fortney v. United States*, 59 F.3d 117, 120 (9th Cir. 1995) (finding taxpayer's "heavy" burden is to show an "abuse of process" or "lack of institutional good faith"); *Ponsford*, 771 F.2d at 1308 (holding petitioner failed to rebut the IRS's showing that summons was issued in good faith).

[7] *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981); *Euge*, 444 U.S. at 714 (holding IRS summonses are "subject to the traditional privileges and limitations"). The attorney client privilege protects communications between a client and its attorney related to the purpose of securing legal advice, as well as legal advice provided by the attorney that would reveal the content of the confidential communications. *See In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977). The privilege's purpose "is to encourage full and frank communication between attorneys and their clients." *Upjohn*, 449 U.S. at 389; *Fisher v. United States*, 425 U.S. 391, 403 (1976); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1070 (N.D. Cal. 2002). The privilege applies equally to communications from the client to its attorney and from the attorney to its client. *See Upjohn*, 449 U.S. at 390. Because the privilege has the effect of withholding relevant information from the fact finder, the privilege is strictly construed, and applies "only where necessary to achieve its purpose." *Fisher*, 425 U.S. at 403; *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). *See also* Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, Title III, § 3411, 112 Stat. 685, 751 (codified at 26 U.S.C. § 7525 (Supp. V. 1999)); *United States v. BDO Seidman, L.L.P.,* 337 F.3d 802, 810 (7th Cir. 2003). The work product doctrine preserves a zone of privacy in which a lawyer can prepare and develop legal theories and strategies with an eye toward litigation. *See United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998); *ChevronTexaco*, 241 F. Supp. 2d at 1082; Fed. R. Civ. Proc. 26(b)(3) ("[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," subject to limited exceptions).

[8] *See In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2nd Cir. 1984) (holding that consultation as to the tax consequences of a reorganization and whether those consequences should affect the structure of a corporate realignment is privileged legal advice); *United States v. Frederick*, 182 F.3d 496, 500-02 (7th Cir. 1999); *United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981); *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973); *United States v. Richey,* 632, F.3d 559, 566 (9th Cir. 2001) (holding accounting advice is not legal advice). *See also* I.R.C. § 7525(a) ("With respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the

created in order to assist with a business decision."[9]  Thus a legal tax analysis generated in anticipation of a possible IRS audit may constitute work product, even if that material also assisted in making a business decision.[10]

"[T]he party asserting the attorney-client privilege bears the initial burden of proving that the communication in question is privileged.  If the party seeking discovery asserts that the privilege which initially attached to the communication in question was subsequently waived, that party must bear the burden of *production* on the issue of waiver.  Once the opponent has proffered

---

extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.").

[9] *Id.*; *accord, In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2003); *Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 719-22 (5th Cir. 1985) (holding that a document prepared by plaintiff "in anticipation of 'dealing with the IRS' . . . may well have been prepared in anticipation of an administrative dispute and thus may constitute 'litigation.'"); *ChevronTexaco*, 241 F. Supp. 2d at 1082-84 ("[W]e agree with the Second Circuit that . . . the work product doctrine can reach documents prepared 'because of litigation' even if they were prepared in connection with a business transaction or also served a business purpose."); *Long-Term Capital Holdings v. United States*, Case No. 3:01-cv-1290-JBA, 2002 WL 31934139, at *9 (D. Conn. Oct. 30, 2002) ("While the [tax opinion] may have been prepared in part to assist in a business decision, it is nevertheless eligible for work product protection because it is a document that was prepared with an eye toward litigation.").

[10] *See Adlman*, 134 F.3d at 1195.  The magnitude and complexity of a transaction, a company's history of being surveyed or audited by the IRS and the novelty of the legal questions may support a finding of reasonable anticipation of litigation with the IRS.  *See id.* at 1196; *see also United States v. Roxworthy*, 457 F.3d 590, 600 (6th Cir. 2006) (finding anticipation of litigation in the form of an anticipated IRS audit based upon the company's size, the large tax consequences resulting from the transaction, audit history and unsettled nature of certain legal aspects); *ChevronTexaco*, 241 F. Supp. 2d at 1082 (finding anticipation of litigation where taxpayer "reasonably believed that it was a virtual certainty that the IRS would challenge the . . . transaction" because the company's tax returns were routinely examined by the IRS, the company was engaged in a transaction involving a "substantial amount of tax dollars" and the IRS "had previously questioned similar transactions."); *United States v. Deloitte LLP*, 610 F.3d 129 (D.D.C. 2010) (finding that pretransaction tax opinion prepared before the tax return was filed and before actual litigation commenced is protected by the work product doctrine); *see also, Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3rd Cir. 1993) (holding litigation need not be imminent for work product protection to apply).  The Internal Revenue Manual acknowledges *Adlman* and *Roxworthy* to be binding precedent.  *See* I.R.M. ¶ 5.17.6.15.

4

Case No.:  5:15-cv-00092-PSG
ORDER DENYING ENFORCEMENT OF INTERNAL REVENUE SERVICE SUMMONS

evidence that the claimed privilege has been waived, the party asserting attorney-client privilege bears the ultimate burden of proving that the privilege was not waived."[11]

Sanmina filed its 2009 federal income tax return on June 15, 2010.[12] It attached a reportable transaction disclosure statement related to Sanmina's claimed worthless stock deduction. The deduction totaled approximately $503 million for its shareholdings in Sanmina AG.[13] In order to examine the worthless stock deduction, the IRS issued an information document request and in response, Sanmina produced a valuation report drafted by its outside counsel at DLA Piper.[14] DLA Piper's valuation report specifically disregarded an account receivable held by Sanmina AG totaling approximately $113 million.[15] Supported by this report, Sanmina claims that this $113 million account receivable lacks economic substance and is merely a bookkeeping entry.[16] On Page 56 of the report, DLA Piper states that it relied upon two of Sanmina's memoranda to support the conclusion that Sanmina AG's $113 million account receivable should be disregarded.[17]

---

[11] *United States v. Chevron Corp.*, Case No. 94-cv-1885-SBA, 1996 WL 444597, at *4 (N.D. Cal. May 30, 1996) (citations omitted) (emphasis in original).

[12] *See* Docket No. 1-1, Rowe Decl. at ¶ 1.

[13] *See id.*

[14] *See id*. at ¶ 2.

[15] *See id.*

[16] *See id.*

[17] DLA Piper's reference to the documents was as follows: "We believed that the book value of each liability provides the best estimation of its [fair market value]. However, based on interviews with Management and related documents provided by Management, [FN: Memo draft: Stock and Debt Losses on Swiss-3600, March 11, 2009. Capital Contribution Agreement between Sanmina-SCI Corporation and Sanmina International AG, July 3, 2006. Memo: Guarantee and Capital Contribution Agreement Concerning Sanmina International AG, July 2, 2006.] we conclude that the intercompany loan between Sanmina Holding AB and Sanmina Kista (about US$90 million) as well as the intercompany non-trade receivable between Sanmina-SCI and Sanmina AG (about US$113 million) should be disregarded." *Id.*

5
Case No.: 5:15-cv-00092-PSG
ORDER DENYING ENFORCEMENT OF INTERNAL REVENUE SERVICE SUMMONS

According to Sanmina,[18] the two memoranda were prepared by Sanmina's tax department counsel and distributed to members of Sanmina's internal tax team and accountants providing tax advice (Ernst & Young and KPMG).[19]  The 2006 memorandum, prepared by former Sanmina tax department lawyer Chris Croudace, discusses legal analysis supporting the execution of certain agreements among Sanmina and its subsidiaries, including the reason for those agreements, their legal enforceability and their tax treatment.[20]  The 2006 memorandum includes citations to and analysis of certain IRS letter rulings and two tax court decisions.[21]  The 2009 memorandum, prepared by former Sanmina tax department lawyer Mark Johnson, analyzes the tax effect of the liquidation of Sanmina International AG.[22]  It contains a short factual discussion and a lengthy legal analysis of the recited facts and their effect on the liquidation of Sanmina International AG.[23]  The 2009 memorandum cites IRS revenue rulings, tax code provisions, tax court decisions and one U.S. Supreme Court decision.[24]

As part of its examination of Samina's federal income tax liabilities for various taxable periods, including 2009, and in accordance with 26 U.S.C. § 7602, an IRS agent issued a summons directing Sanmina to appear in its offices to produce the two disputed memoranda.[25]  Sanmina acknowledged that the summoned memoranda are in its possession, but asserted that the documents

---

[18] *See* Docket No. 8 at 2-3.

[19] *See id.* at 1; Docket No. 8, Dulkie Decl. at ¶ 1; Docket No. 8, Duklie Decl. at Ex. 1.

[20] *See* Docket No. 8, Dulkie Decl. at ¶ 3; Docket No. 8, Bautista Decl. at ¶ 6.a.

[21] *See* Docket No. 8, Bautista Decl. at ¶ 6.a.

[22] *See id.*

[23] *See id.*

[24] *See id.* at ¶ 6.b.

[25]  *See* Docket No. 1-1, Rowe Decl. at ¶ 8; Docket No. 1-2, Ex. A.

are privileged and objected to their production.[26]  Sanmina then failed to appear as summoned and did not produce the memoranda as demanded in the summons.

The IRS now petitions this court for an order enforcing its summons.

## II.

This court has jurisdiction pursuant to I.R.C. §§ 7402(b) and 7604(a) and 28 U.S.C. §§ 1340 and 1345.  The parties further consented to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[27]

Beyond its written response to the court's order to show cause, Sanmina requests to respond to the government's brief.  Similarly, to the extent the court has questions about the content of the disputed memoranda, the IRS requests that the court conduct an in camera review.[28]  The court need not grant either request, because on the present papers and the arguments provided at the March 31 hearing, Sanmina justifies its privilege and work product claims.

## III.

As a preliminary matter, the parties have done what they needed to do to invoke the court's consideration of privilege and waiver.  The IRS made the required *Powell* showing for enforcement of the summons through the declaration of a revenue agent assigned to the team conducting the examination.[29]  Sanmina in turn properly raised the attorney client privilege and the work product doctrine and timely provided a privilege log and affidavits showing limited distribution.[30]  And in a letter responding to Sanmina's representative, the IRS laid out its position on Sanmina's privilege

---

[26] *See* Docket No. 1-1, Rowe Decl. at ¶ 10; Docket No. 1-3, Ex. B.

[27] *See* Docket Nos. 3, 12.

[28] *Cf. Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, Case No. 09-cv-0100-DKC, 2013 WL 6844359, at *6-12 (D. Md. Dec. 24, 2013).

[29] *See* Docket No. 9 at 5.

[30] *See* Docket No. 8, Bautista Decl. at ¶¶8, 9, Ex. 2; Docket No. 8, Dulkie Decl. at ¶2.

claims, including its argument on waiver.[31]  The questions then are whether the attorney client privilege attaches, if so whether it is waived, whether the work product doctrine applies, and if so whether it is waived. The answers to those questions are, respectively:  yes, no, yes and no.

*First*, Sanmina sufficiently shows the memoranda constituted tax advice from lawyers to Sanmina—not merely preparation of tax returns or number crunching—such that the attorney client privilege attaches.[32]  The attorney client privilege protects communications between a client and its attorney related to the purpose of securing legal advice, as well as legal advice provided by the attorney that would reveal the content of the confidential communications.[33]  The privilege applies equally to communications from the client to its attorney and from the attorney to its client.[34]  It also applies in proceedings to enforce IRS summonses,[35] and specifically to legal advice relating to a tax claim.[36]  Sanmina has shown that both memos contain legal analysis, were prepared by Sanmina's tax department lawyers, and were provided confidentially to company personnel who had a need for legal advice.[37]

The IRS contends that Sanmina has not made clear that the memoranda were prepared for legal rather than business purposes, or that the communications relate to legal rather than business

---

[31] *See* Docket No. 9-1, Rowe Reply Decl. at ¶ 7, Ex. D.

[32] *See* Docket No. 8, Bautista Decl. at ¶¶ 6.a, 6.b; *In Re Grand Jury Subpoena Duces Tecum,* 731 F.2d at 1037; *ChevronTexaco*, 241 F. Supp. 2d at 1076; *Richey*, 632 F.3d at 568.

[33] *See In re Fischel*, 557 F.2d at 211.

[34] *See Upjohn*, 449 U.S. at 390.

[35] *See id.* at 395-96 (applying attorney client privilege in IRS summons enforcement action).

[36] *See, e.g.*, *Roxworthy*, 457 F.3d at 594-600.

[37] The elements required to establish the attorney client privilege are as follows:  "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002), *as amended on denial of reh'g* (Mar. 13, 2002), *citing* 8 Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961).

advice.[38] For example, the attorneys were not in the general counsel department and shared the memoranda with two tax employees.[39] The IRS further contends that Sanmina has failed to establish that the tax-practitioner privilege applies, or that Sanmina was soliciting protected tax advice in transmitting the memoranda to its tax return preparers, independent auditor and valuation service provider.[40] But there is no dispute that both of the drafters were attorneys at the time of drafting, at least one of the memoranda had "Confidential—Work Product Privilege" written on each page and Sanmina's declarants explain the memoranda's legal analysis contents with detail.[41]

*Second*, Sanmina did not waive the privilege concerning the "subject matter" of the report by producing to the IRS the DLA Piper report, which relies on and summarizes the content of the memoranda.[42] Nor is there any merit to the IRS' argument that DLA Piper was engaged to provide non-legal valuation services rather than legal advice, such that Sanmina's transmittal of the memoranda to DLA Piper constituted waiver.[43]

---

[38] *See In Re Grand Jury Subpoena Duces Tecum,* 731 F.2d at 1037; *In re John Doe Corp.,* 675 F.2d 482, 488 (2d Cir. 1982); *TAT Records v. Island Def Jam Music Group,* 214 F.R.D. 143, 144 (S.D.N.Y. 2003) (quotation in original); *ChevronTexaco*, 241 F. Supp. 2d at 1076.

[39] *See* Docket No. 9 at 7.

[40] *See id.* at 10-11.

[41] *See* Docket No. 8, Bautista Decl. at ¶¶ 6.a, 6.b.; Docket No. 8, Dulkie Decl. at ¶ 3 Ex.1.

[42] *See* Docket No. 9 at 11.

[43] *See id.* at 9-10.  In oral argument, the IRS retracted its argument that transmittals of the memoranda to Earnst & Young and KPMG constituted client-attorney privilege or work product doctrine waiver. *See* Docket No. 13, 10:38:50-10:39:00 ("The DLA Piper report is the document effectuating the waiver, it's not the transmission from Sanmina to their accountants of the memoranda."). *See also Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 448 (S.D.N.Y. 2004) (holding plaintiff's disclosure of an investigative report to plaintiff's outside auditor did not waive work product protection because auditor was not an adversary or a conduit to a potential adversary); *Gutter v. E.I. Dupont de Nemours & Co.*, Case No. No. 95-cv-2152, 1998 WL 2017926, at *3 (S.D. Fla. May 18, 1998) (reporting and recommending that disclosure to outside auditors did not waive work product privilege "since there is an expectation that confidentiality of such information will be maintained by the recipient.").

United States District Court
For the Northern District of California

The voluntary production of privileged information may result in a waiver of all communications on the same subject.[44] But Sanmina distributed the attorney memos only to its counsel and accountants.[45] Distribution to DLA Piper did not constitute waiver because DLA Piper was Sanmina's legal counsel, even if DLA Piper sometimes provided non-legal services to Sanmina.[46] Distribution to Sanmina's accountants, or federal tax practitioners, was also privileged, and did not constitute waiver of the attorney client privilege.[47] Furthermore, Sanmina's production of DLA Piper's report to the IRS did not constitute waiver of attorney client privilege, because DLA Piper's mere mention of the existence of the memoranda did not summarize or disclose the content of the memoranda.[48]

***Third***, Sanmina has established that both memoranda may be withheld under the work product doctrine.[49] The IRS contends it is not clear that Sanmina originally created the documents in anticipation of litigation, especially because no litigation or audit was pending at the time the

---

[44] *See Weil*, 647 F.2d at 18 ("[I]t has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject"); *Davis*, 636 F.2d at 1044 ("[D]isclosure of any significant portion of a confidential communication waives the privilege as to the whole"); *United States v. The El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982); *Evergreen Trading, LLC v. U.S.*, 80 Fed. Cl. 122, 129 (2007) ("[I]f a party waives the privilege as to a particular communication, it also is deemed to waive the privilege as to all communications involving the same subject matter"); *Chubb Integrated Systems Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 63 (D.D.C. 1984) ("Voluntary production of certain privileged documents implies a waiver of all communications on the same subject."); *In re Martin Marietta Corp.*, 856 F.2d 619, 623 (4th Cir. 1988) ("[I]f a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as the details underlying the data which was to be published will not enjoy the privilege") (internal quotations omitted).

[45] *See* Docket No. 8, Bautista Decl. at ¶ 8, Ex.2.; Docket No. 8, Dulkie Decl. at ¶¶ 2, 3, Ex.1.

[46] *See* Docket No. 8, Dulkie Decl. at ¶ 3, Ex.1.

[47] *See* I.R.C. § 7525. *See also* 5 U.S.C. § 500(c); 31 C.F.R. §§ 10.3 and 10.7(c)(viii) ("Federally authorized tax practitioners" include lawyers, accountants and tax preparers authorized to practice before the IRS.).

[48] *See* Docket No. 9-2 at 10.

[49] *See* Docket No. 9 at 11-12.

10
Case No.: 5:15-cv-00092-PSG
ORDER DENYING ENFORCEMENT OF INTERNAL REVENUE SERVICE SUMMONS

memoranda were drafted.[50]  Instead, the IRS speculates that the 2006 memorandum was drafted because its author was leaving the company, especially because no one reviewed it for 32 months, or that the memoranda were drafted for preparation of tax returns—the reason for, function of or discussion in the document is not clearly litigation, settlement strategies or related considerations.[51]

The court applies a "because of" standard under such circumstances, and when applying the "because of" standard to determine if a document was created in anticipation of litigation, the totality of the circumstances surrounding the document's creation must be considered.[52] Sanmina's description of the memoranda indicates an analysis of complex business and legal issues that ultimately supported Sanmina's decision to take a worthless stock deduction arising from its ownership of Sanmina International AG.[53]  The size of the worthless stock deduction meant that Sanmina could reasonably have anticipated that the IRS would scrutinize and challenge Sanmina's tax treatment of its holdings in Sanmina International AG,[54] as the IRS has here.  Any delay in reviewing the memoranda also works against the notion that the memoranda were drafted for the purpose of tax return preparation.

*Fourth*, Sanmina did not waive its work product claims by producing the DLA Piper report to the IRS, a potential adversary.[55]  The applicable standard for determining whether disclosure to a third party constitutes a work product waiver is not merely whether the documents were shared with third parties, but whether such disclosure is consistent with maintaining secrecy against an

---

[50] *See* Docket No. 9 at 13.

[51] *See id.*

[52] *Richey*, 632 F.3d at 568 (finding property appraisal work file was not prepared entirely in anticipation of litigation and so was not protected from disclosure to the IRS by the work product doctrine where taxpayers were required to attach the resulting appraisal report to their tax return in order to substantiate the taking of a deduction).

[53] *See* Docket No. 8, Bautista Decl. at ¶ 6.

[54] *See id.* at ¶ 7; Docket No. 8, Dulkie Decl. at ¶ 3.

[55] *See* Docket No. 9 at 15.

11

Case No.: 5:15-cv-00092-PSG
ORDER DENYING ENFORCEMENT OF INTERNAL REVENUE SERVICE SUMMONS

adversary.[56] As discussed above, the DLA Piper report merely references the documents, rather than summarizes them.[57] Sanmina disclosed no privileged work product to the IRS.

## IV.

The memoranda are protected by the attorney client privilege and the work product doctrine. The IRS's enforcement of summons therefore is DENIED.

**SO ORDERED.**

Dated: May 20, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[56] *See Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994) (finding no work product waiver unless the disclosure "substantially increases the opportunity for potential adversaries to obtain the information"); *Gramm v. Horsehead Indus., Inc.*, Case No. 87-cv-5122-MJL, 1990 WL 142404, at *5 (S.D.N.Y. Jan. 25, 1990) (finding no waiver of work product protection to a document transmitted to the company's outside auditors because such a disclosure "cannot be said to have posed a substantial danger at the time that the document would be disclosed to plaintiffs."); *Adlman*, 134 F.3d at 1200, n.4 (holding work product may be shown to others, "simply because there was some good reason to show it," without waiving the privilege).

[57] *See* Docket No. 9-2 at 10.