IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Petitioner,

v.

SANMINA CORPORATION AND SUBSIDIARIES,

    Respondent.

No. C 15-00092 WHA

**ORDER AND FINDING RE IN CAMERA REVIEW OF DOCUMENTS WITHHELD BY SANMINA**

## INTRODUCTION

In this action to enforce an IRS summons, petitioner seeks production of memoranda that respondents claim are protected by the attorney-client privilege and attorney work-product doctrine. By request from our court of appeals, the Court has reviewed in camera the memoranda submitted by the parties. This order finds that the attorney-client privilege and attorney work-product doctrine were waived when Sanmina produced the memoranda to DLA Piper and when DLA Piper produced the valuation report to the IRS. Thus, the memoranda are subject to production.

## STATEMENT

The Internal Revenue Service is conducting an examination of the federal income tax liabilities of respondent Sanmina Corporation and subsidiaries for the 2008, 2009, and 2010 taxable periods (Dkt. No. 1, Pet. ¶ 3). Its scrutiny comes after Sanmina took a worthless stock

deduction arising from ownership of shares of stock in a subsidiary named Sanmina International AG (Dkt. No. 8 at 1). This deduction totaled roughly $503 million and offset all of Sanmina's taxable income for the 2008 tax year (Dkt. No. 8 at 18). To establish the validity of the deduction, Sanmina provided the IRS with a valuation report prepared by DLA Piper *(ibid).* In a footnote on page fifty-six of the 102-page report, DLA Piper referenced two memoranda: A July 2, 2006 memorandum titled "Guarantee and Capital Contribution Agreement Concerning Sanmina International AG" and a March 11, 2009 memorandum titled "Stock and Debt Losses on Swiss-3600" (*id.* at 3). DLA Piper's valuation report relied on the contents of the memoranda in concluding that Sanmina's largest asset, an intercompany receivable worth $113 million, lacked substance and should be disregarded (Docket No. 9-2, Exh. C at 10). The IRS issued a summons on December 18, 2013, demanding Sanmina produce the memoranda in question (Dkt. No. 1-2, Exh. A at 3). Sanmina declined to produce the memoranda, invoking the attorney-client privilege and attorney work-product. On January 8, 2015, the IRS filed a petition to enforce the summons (Dkt. No. 1).

On May 20, 2015, Magistrate Judge Paul S. Grewal issued an order denying enforcement of the summons (Dkt. No. 15). The IRS appealed. Our court of appeals remanded the matter on December 20, 2017, asking for a more informed analysis after Judge Grewal declined to review the memoranda in camera (Dkt. No. 21 at 2). As Judge Grewal is no longer serving, this matter was re-assigned to the undersigned as the general duty.

On remand, the parties disputed the scope of the remand. Consequently, a March 2 order requested clarification on the scope of remand. On June 19, our court of appeals issued an order defining the scope of remand as: (1) whether the memoranda are privileged in the first instance and (2) whether such privilege was waived (Dkt. No. 36). This order affirms Judge Grewal's finding that the memoranda are protected by the attorney-client privilege and attorney work-product doctrine but finds that privilege was waived when Sanmina disclosed the memoranda to DLA Piper to obtain an opinion on value, then turned over the valuation report to the IRS.

# ANALYSIS

## 1. THE MEMORANDA ARE PROTECTED BY ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE.

Having reviewed the documents in camera, this order finds the memoranda were protected by the attorney-client privilege and the work-product doctrine.

### A. Attorney-Client Privilege.

The attorney-client privilege protects communications between a client and his attorney related to the purpose of securing legal advice. *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977). The privilege not only covers the substance of the client's communication, but also extends to the attorney's advice in response. *Ibid.* Here, Sanmina sufficiently showed that the memoranda were prepared by in-house counsel, in response to a request for legal advice, and contain legal advice communicated in confidence to Sanmina executives (Dkt No. 8 at 18, Decl. ¶ 6). Thus, the memoranda are protected by attorney-client privilege.

### B. Work-Product Doctrine.

Under Federal Rule of Civil Procedure 26(b)(3), documents prepared in anticipation of litigation are not discoverable. In circumstances where a document is not prepared exclusively for litigation, the "because of" test is used. *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011). In determining whether a dual purpose document was prepared "because of" litigation, "courts must consider the totality of the circumstances" surrounding the document's creation. *Ibid.*

Here, while there was no pending litigation when the memoranda were drafted, Sanmina reasonably anticipated that the IRS would scrutinize its $503 million stock deduction, so it engaged in-house counsel to analyze the consequences of taking such a deduction (Dkt. No. 8 at 20, Decl. ¶ 7). Thus, the memoranda were protected work-product because they were prepared because of a potential challenge by the IRS.

## 2. SANMINA WAIVED ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT PROTECTION.

In deciding whether attorney-client privilege or work-product protection have been waived, the controlling decision in our circuit is *Weil v. Inv./Indicators, Research & Mgmt.*,

*Inc.*, 647 F.2d 18 (9th Cir. 1981). There, our court of appeals held that "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other communications on the same subject." *Id.* at 24. *Weil* involved testimony by the directors of a mutual fund that disclosed confidential communications with their counsel. *Id.* at 23. The court reasoned that the mutual fund could not disclose a privileged attorney communication about a matter that was relevant and material to issues in the case, then invoke privilege to shield other communications on the same matter. *Ibid.*

### A. Disclosure of the Memoranda To DLA Piper Constituted Waiver.

Any attorney-client privilege that might have attached to the memoranda was waived when Sanmina voluntarily disclosed the memoranda to DLA Piper, not for the purpose of receiving legal advice, but for the purpose of determining the value of Sanmina AG's common stock. Sanmina engaged DLA Piper for the purpose of conducting a fair market value analysis to be used for tax compliance reasons (Dkt. No. 9-2, Exh. C at 2). Anticipating that the IRS would adopt an "adverse position" to taking a $500 million deduction, Sanmina sought DLA Piper's services in producing the valuation report (Dkt. No. 8 at 18, Decl. ¶ 3). Thus, the point of waiver took place when Sanmina provided the privileged memoranda to DLA Piper for the purpose of producing a valuation report to then turn over to the IRS. Sanmina cannot disclose a privileged attorney communication relevant to an issue of material fact, then invoke privilege to shield that communication from discovery. *Weil*, 647 F.2d at 23.

Sanmina seeks to minimize DLA Piper's reliance on the memoranda by arguing that DLA Piper merely reviewed the memoranda and the valuation report's conclusions were not based on the memoranda (Dkt. No. 47 at 15). This is in direct conflict with the valuation report itself. The valuation report explicitly stated that DLA Piper based its conclusions on "the related documents provided by management" then referenced the memoranda by name in a

footnote (Dkt No. 9-2, Exh. C at 10).[*] As such, this order finds that Sanmina waived any privilege when it disclosed the memoranda to DLA Piper.

### B. Disclosure of DLA Piper's Valuation Report To the IRS Waived Privilege.

The foregoing is dispositive but the following additional point deserves mention. Sanmina's disclosure of the DLA Piper valuation report to the IRS waived any applicable privilege as to materials used to reach the valuation. DLA Piper's valuation report relied on the contents of the memoranda in concluding that Sanmina's largest asset, an intercompany receivable worth $113 million, lacked substance and should be disregarded (Docket No. 9-2, Exh. C at 10). DLA Piper explicitly stated in the valuation report that it based its conclusions, at least in part, on the two memoranda at issue (*ibid*). The analyses that informed the valuation report's conclusions should, in fairness, be considered together. Fed. R. Evid. § 502(a)(3). In order for the IRS or any other reader to evaluate the DLA Piper opinion, the materials on which the opinion were based became discoverable. Otherwise, the IRS or any other reader would be forced to simply accept the opinion without access to the foundational material, and, in this case, to the foundational material explicitly relied on in forming the opinion. Thus, privilege was waived.

Sanmina argues that the footnote merely disclosing the existence of the memoranda did not waive any applicable privilege as to their entire contents (Dkt. No. 47 at 12). Sanmina attempts to distinguish the government's case law, but fails to provide case law to support its position, arguing that the IRS must "first demonstrate that Sanmina disclosed the *content* of the communications . . . before it argues the scope of the waiver" (Dkt. No. 47 at 13).

---

 [*] DLA Piper's valuation report stated, in relevant part: "We believed that the book value of each liability provides the best estimation of its [fair market value]. However, based on interviews with Management and related documents provided by management [fn6], we concluded that the intercompany loan between Sanmina Holding AB and Sanmina Kista (about US$90 million) as well as the intercompany non-trade receivable between Sanmina-SCI and Sanmina AG (about US$ 113 million) should be disregarded (Dkt. No. 9-2, Exh. C at 10).

 Footnote six, referenced above, refers to three cited documents, including the two memoranda in question: Capital Contribution Agreement between Sanmina-SCI Corporation and Sanmina International AG, July 3, 2006 and Memo: Guarantee and Capital Contribution Agreement Concerning Sanmina International AG, July 2, 2006 (*ibid).*

5

Sanmina cites *Tennenbaum v. Deloitte & Touche*, 77 3d 337 (9th Cir. 1996), which actually supports the government's position. There, our court of appeals held that a promise to waive privilege is not, in itself, a waiver, rather, it is disclosure that triggers waiver. *Id.* at 341. The court noted that waiver is rooted in notions of "fundamental fairness" and that its principal purpose is "to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming shelter of the privilege to avoid disclosing those that are less favorable." *Id.* at 340.

Here, Sanmina wishes to do just that. Sanmina relies on DLA Piper's determination supporting a $503 million stock deduction, but it avoids disclosing the very foundational analysis that informed its conclusion. DLA Piper acknowledged that it based its conclusions on the memoranda in question. Thus, it would be fundamentally unfair for Sanmina to disclose the valuation report while withholding its foundation. Fed. R. Evid. § 502(a)(3).

It is unnecessary to resort to the specialized rules governing experts in federal court litigation under Federal Rule of Civil Procedure 26(b)(4)(C). The events in question occurred outside of federal litigation and are governed by general principles.

Finally, Sanmina argues that the government has not produced any evidence of unfairness, but fails to cite case law that supports its argument (Dkt. No. 47 at 14). Sanmina, however, bears the ultimate burden of establishing all elements of the privilege, including non-waiver. *See Weil*, 647 F.2d at 25. Sanmina has failed to do so.

**CONCLUSION**

Having reviewed the contested memoranda submitted in camera, this order finds Sanmina waived attorney-client privilege and work-product protection. The clerk is directed to inform our court of appeals of this order. Additionally, counsel shall please promptly inform

our court of appeals of this order and provide the two memoranda at issue under seal and ex parte to the appellate panel (if requested) so that the panel can review this order.

Dated: October 4, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE